and case number 20-2592 from the District of Eastern Missouri, Tom Magee v. United States. All right. Ms. McLean? Good morning, Your Honors, and may it please the Court. My name is Kelsey McLean, and I represent one of the appellants in this case, Benjamin Harris. The issue in this case is whether the District Court erred in denying Mr. Harris' petition for certification of employment and failing to substitute the United States as a defendant for Mr. Harris in the underlying case and granting the United States' motion to dismiss the matter. So there are two reasons why the District Court erred in failing to certify that Mr. Harris was in the course and scope of his employment. First, the case law is determined under Missouri case law for course and scope. Missouri cases hold that there is a presumption that an employee is in the course and scope of their employment if they are driving a vehicle owned by their employer and within the general employment of their employer at the time of the accident. In this case, Mr. Harris was driving a USPS vehicle and was generally on the clock with the United States Postal Service at the time of the accident. So the United States has to rebut that presumption, which they have not done in this case. First, Mr. Harris would be considered in the course and scope of employment under Missouri law because he was furthering the interest of his employer. Under the guidelines, Mr. Harris is allowed to take two 10-minute personal breaks per day. There are no guidelines under the United States Postal Service handbook that state when this break should take place, only where it should take place. There are two locations Mr. Harris was authorized to take his break, and he was at one of these locations when the accident occurred. Second, Mr. Harris was helping a customer in going above and beyond, which he testified in his deposition is something that the Postal Service regularly asks their employees to do, go above and beyond for customers. And secondly, the law in Missouri further supports the fact that even if the district court determined that Mr. Harris was not in the course and scope of his employment because he had somehow deviated from his employment, even though we contend that that's not true, as he was at an authorized break location, the law in Missouri states that should an employee be at an authorized break location or just slightly deviate, then it's considered a minor deviation under Missouri law. This is outlined in the American Family case cited in our brief. The facts of that case are very similar here. Mr. Harris was driving a vehicle furnished by his employer, just like in the American Family case. Just as in American Family, the employer had a very strong say in how to create the routes that the drivers were supposed to stay on, and just as in American Family, the route was slightly deviated from here. There was no specific route in that case, was there? Whereas in this case, the driver here has a very specific route that they are to travel and they are prohibited from backtracking or going back along the route. The facts actually show, Your Honor, that the no backtracking rule is only for the actual delivery of mail. With electronic scanning these days, mail is delivered in a very specific order and to be most efficient, and if it needs to be delivered out of order, Mr. Harris did testify that he would get permission from his boss to deliver the mail out of order. However, that does not apply under any Postal Service guidelines to actual breaks. Mr. Harris stated that at a certain point on his route, he needed to use the restroom, stop and get a bottle of water, something like that. He may be in a place in a residential area where he can't do that. He would be allowed to drive off his route, go to a gas station, take care of things, and the same Mr. Harris may have deviated off his route to do things earlier in the day, but at the actual time of the accident, he was within his route and was at an authorized break location. I see that I have about two minutes left, so I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you, Ms. McClain. Good morning, Your Honor. Yes, Your Honor, thank you very much. While Ms. McClain, and you may please the court, good morning. While Ms. McClain represents the employee, I represent the injured party here, though obviously I concur with everything that Ms. McClain said. I'd like to amplify on a couple of issues. The first one has to do with all appellate courts love to talk about, and that's standard of review. And the United States made an standard of review here, which I think is important, because not only do I believe the United States is incorrect, but by their argument, they actually support what we're trying to say here. The review here is de novo, and the United States is just incorrect when it argues that this matter should be evaluated under the clearly erroneous standard. As set forth in the briefing, the clearly erroneous standard only applies when there are extraneous facts in dispute. Here, we're not talking about extraneous facts here. We're talking about facts that go directly to the heart of the case. We can have an argument to what extent about those are in dispute, but the clearly erroneous standard is meant for oral testimony, which obviously did not occur here. But because this is what we're discussing are facts that go directly to the heart of the case, as the case law talks about facts that are inextricably intertwined with the facts of the case, that is the best argument we have here that at best for the United States, this is something that should be determined by a jury. At the same time, it determines scope of employment. If the United States truly believes there are facts in issue, then under Eighth Circuit law, what we're then supposed to do is we're going to have the jury decides these issues, and that is something that Missouri, and this Missouri law we're talking about here, does all the time. There are MAIs, in fact, multiple MAIs that talk about agency and that United States wants to argue that we have facts at issue, okay, then these issues should be decided by a jury under Missouri MAIs and not by the court when it is trying to evaluate these issues. I want to talk about point of deviation briefly, too. The United States' main point here is that there was a deviation, and that somehow that Mr. Harris did not return back to this point of deviation. There are a couple of problems with this. First of all, the court should keep in mind the testimony that Mr. Harris testified. He actually went to the bathroom up at the Kmart, the supposedly point where the deviation occurred, and he was only a couple blocks off his route. If you're talking about Missouri law where they have talked about cases where they have found no scope of employment, we're talking about people who are way off the reservation who are doing personal stuff. Does it matter how the different policies of the employers that are involved in determining the significance of a deviation? Generally, yes. Specifically here, no. And the reason why is that there is no deviation from the overall policy that the post office had. He was going to the bathroom. He was only going off his route for two blocks to go to the bathroom. What even the post office designated representative testified to is there is certainly some leeway when they're allowing their folks to go to the bathroom, and not surprisingly. Now, he's down in Festus. Now, if he'd gone to the bathroom up in Troy, well, then we'd be having a different case. But that's not what happened here. He was two blocks off. He immediately went back to a comfort stop, which he was authorized to do, and then went to an authorized break location, which he was authorized to do. So even if the deviation had occurred, that's not what's going on like what these cases have. I want to go back very briefly to the standard of review because I walked in here believing that what we had was a de novo review of the scope of employment decision or determination. But the facts necessary, because it's a mixed question of fact and law, we would view the facts found by the court and review those under the clearly erroneous standard. Are you saying that's wrong? I believe that's incorrect, your honor. If you look at the case law, the only time that we use a clearly erroneous standard is when we're talking about extraneous facts. These aren't extraneous facts here. These are facts. But you have to make fact findings in order to reach the scope of employment decision, right? I mean, I don't know how any trial judge can make that determination without making some fact findings. Counsel, what law do you cite us to? What cases do you cite us to for the proposition you put forth? Limiting fact finding to extraneous facts. Yeah, I'm looking at a judge. And I'll tell you what, I can certainly tell you that in rebuttal. What's an extraneous fact? One that doesn't matter to the case? Yeah, for example, here it would be something like if we're arguing about whether this happened in Missouri or Illinois or something like that. That's an extraneous fact. We have a standard review for facts that are immaterial to the case. Well, not immaterial to the case, but not immaterial to making the determination of whether we're talking about whether this dismissal should have taken place. I see. Well, if you have a case that says there's a difference between standards of the United States, judge, it's in the brief. Okay, I'd like to reserve, if I could, my remaining 20 seconds for rebuttal. All right. Thank you, Mr. Knierim. Ms. McClain, I'm sorry, I almost overlooked the appellee here. Mr. Llewellyn. Thank you, your honors. Can you hear me? Yes, we can. All right. Thank you. Good morning. May it please the court. My name is Nick Llewellyn. I'm appearing today on behalf of the United States as the proper party in place of the Postal Service pursuant to the Federal Tort Claims Act. This case is about determining whether the district court was correct that it lacked jurisdiction to hear the case by finding that the United States did not waive sovereign immunity under the FTCA because Appellant Harris was not acting within the course and scope of employment as a Postal Service carrier at the time that Appellant Harris injured Mr. Owens by driving his postal vehicle into Mr. Owens. Mr. Harris's deviation was marked and unusual. The appellants want to indicate to the courts that it was a minor deviation. However, it was not. Deviating from the business of delivering mail for purely personal reasons to do a favor for a friend, go shopping at Kmart for him, then stopping at a gas station for a soda, then delivering the purchase item to that friend, and while there had a smoke with him, and then before leaving the friend's residence, injuring the friend with the postal vehicle before returning to the point where the deviation began and mail delivery could continue was certainly not authorized or permissible. And that constitutes a marked deviation from the master's business, the Postal Service's business. He violated Postal Service policies. It's interesting that neither Appellant Harris nor Appellant Owens even address the Postal Service policies at the lower court nor at this court. These stringent requirements among many other USPS policies, they serve the Postal Management, costs, efficiency, safety, as well as fulfilling expectations regarding timely delivery of mail. Mr. Harris's departure from his route for 25 minutes for entirely personal business was anything but a slight or minor deviation. It was not authorized and violated the policies with regard to delivery of mail and use of the Postal Service vehicle. And both the written and unwritten policies here are significant and substantial. The burden of proof in this case always stays with the plaintiffs. While there is a presumption in cases like this, the burden of proof doesn't shift. It's a matter of whether or not, because if there was a presumption and the government did not provide any evidence, then the case would be over. They would be in the scope of employment. But by presenting the evidence that the court weighed, it is undisputed. The presumption in this case is undisputed. But the evidence presented by the government was substantial and controverted, the presumption, and therefore the presumption disappeared, as the district court pointed out and cited the Ewing Cage case versus Quality Product, 18 Southwest 3rd 147. Sufficient evidence existed in that case to find that the employee was acting within the scope of employment at the time of the accident. But here, applying Missouri law, the district, quoting Ewing, said, the scope of employment inquiry is focused not on the time or motive of the conduct, but rather on whether the act was done by virtue of the employment and in furtherance of the business or interest of the employer. To go shopping for a friend while you're doing your route is not the purpose of the Postal Service. The presumption... Mr. Llewellyn, this is Judge Smith. Does it matter that the location of the friend's residence was a recognized brake stop? The issue with regard to the brake stop is this, Your Honor. The brake stop was an form, and it is in an approximate location. The brakes are taken along the route in sequential order as they are delivering the mail. There are times, and it was indicated in this case that he didn't take a brake at his location during the inspection that occurred the year before, several months before. And during that inspection, he didn't go off his route in any way. He took brakes at different locations than he indicated on the form that we're talking about now. However, during that inspection, he took them along the route in sequential order of the mail delivery. Interesting, both brakes were exactly 10 minutes when the supervisor was at 1032 in the morning on Main Street, not at 501 Maple Street. So during the inspection, he had passed it. That's not a violation. He took his first brake along the route. The issue presented by this case is that 501 Maple Street, where Owens resided, was one of the first stops along the route. So that brings up the issue of backtracking in this case that I believe you indicated earlier, Judge. Backtracking is simply not backtracking. It's simply an expectation that there is a predetermined set route in the first place. And even Mr. Harris admitted that he was aware that he could not backtrack. He sought authorization from the supervisor if he intended backtracking on his route. He acknowledged the Postal Service does not like backtracking. He even stated, quote, that way if someone downtown is watching your scanner or doing anything, why did you go here or stop there when this should have been your next delivery, but you went over here? And that is in appendix 258, page 259. The Postal Service has GPS tracking. They have that for a reason. Now, does the Postal Service check the GPS tracking every day on their employees? No, they don't. But they do use it, and it was used in this case to determine the route, the specific route and the specific locations that Mr. Harris had taken. So I have a question, Mr. Lowell. Sure. The briefs from the other side quote this Mr. Finch on the question of backtracking. They have him saying the assumption, I guess it's an assumption when these are in there, is that you take the break when you're there, meaning, I guess, while you're on the route. But, of course, the other side says, well, he's just calling that an assumption as opposed to something that's written in a policy somewhere. What do you have to say about that? Well, with regard to the unwritten policy, that is correct, Your Honor, that backtracking is an unwritten policy. The Postal Service has both written policies and unwritten policies. Mr. Finch testified that it's an official break location because you're there, because you're at 501 Maple delivering, and you're done delivering. You can take a 10-minute break. It's not so anytime you feel like taking a break, you can go back to 501. Right. I know what Finch said. How is that so-called unwritten policy communicated to the mail carriers, Your Honor? I only have the evidence of Mr. Harris himself admittedly acknowledging that it was against policy to backtrack without authorization. That's the only evidence that I have his admission that when he did backtrack or go back on his route or have to do something different than the sequential delivery of his mail, he would contact his supervisor. So you think that shows that he knew it was a policy? I believe so, Your Honor. I believe by him admitting that when he would have to and indicating that he knew that they watched his GPS system. He also testified that he did it too. He said he didn't have to backtrack every day, but on the days he would happen, he conceded that rule was to get authorization to backtrack. He would inform his supervisor because he understood the rule and he testified, he stated, I did it to cover me. That way there's no questions asked. And that's the inference that the district court can make from that type of evidence that there was an unwritten policy in place and that Mr. Harris was aware of. The written policies that the district court looked at called them the strict policies. The policy handbooks were explicit in their limitations regarding the use and deviation. They prohibited the use of the postal vehicle for personal use. The guidelines also regiment a carrier's route and delivery order such that deviations and backtracking without prior authorization are not permitted. Harris intentionally deviated from his route while his postal service to run an admitted personal errand. He admitted it was a personal errand and shop at Kmart for Owens and then deliver that purchase item to Owens without the postal service's knowledge, permission, or instruction. And this was certainly beyond the postal service's expectations. And as such, the district court properly found that the evidence in this case indicates that Harris deviated from his route without authorization, using his postal vehicle to run a personal errand for a friend, and that the postal service did not acquiesce to Mr. Harris to use that vehicle to purchase and deliver dog food to a friend while delivering mail on his route. Defendant Harris's route and hours of employment, they were strictly set and monitored. Harris had not yet, he had not even left Owens's residence when the accident occurred, and he was not engaged in an act of service for his employer by shopping at Kmart for a friend and delivering that before getting back to his job. And the district court properly found that defendant Harris, Mr. Harris had not yet returned to the point of deviation or the place where in the performance of his duties he should be. And looking at the Missouri cases that are used in this matter under the FTCA, the law of the state where the injury occurred, you go back, yes, the government cited old case law in years going back to 1937, followed in the 50s and then the 60s, but none of those have been overturned from the Supreme Court. Brown versus Moore, a mark and decided character and the evidence is not conflicting is a question of law for the court. In Humphrey versus Hogan, the majority rule is that the relation of the master and servant is not restored until he has returned to the place where the deviation occurred or to a corresponding place, someplace where in the performance of his duty he should be. Mr. Finch testified he wasn't where he was supposed to be, delivering dog food to a friend is not conducting postal service business. And then you look at Thomas versus McBride and the district court used all three of these cases, these lines of the Missouri law, turning aside from a designated and customary route where the motive is self-interest. That is the self-interest here. That's the sole motive. It was unmixed with any intent to serve the master. There was no intent to serve the postal service by driving to Kmart, pick up dog food for a friend, and then go deliver it to him and have a smoke with him. Counsel, the plaintiffs in the case seem to argue that that was consistent with the postal service's encouragement of its carriers to do what they could to serve their clientele. I do agree, your honor, that they argue that, but it's an outrageous argument to believe that the postal service's position is by stating, and that's the only testimony we have about that from Mr. Harris, that he believes that I was going above and beyond for my customers. It's outrageous to believe that the postal service would authorize its carriers to go run errands and favors for all the customers on their routes. The cost and efficiency and even dictated by the minutes and seconds, the route is a sequential order, and if you finish it early, you come back to the postal service and you do more work off the route. I see that my time is almost up. Are there any other questions from the court? I don't see any. All right, your honor, I ask that this affirm the district court's finding that the presumption was overcome by substantial and controverting evidence, applied those facts to the scope of employment in this, and found and properly found under the facts of the case, weighing all the evidence, that Mr. Harris was not in the scope of employment at the time that he injured Mr. Owens. Thank you. All right, thank you, Mr. Llewellyn. Ms. McClain? Thank you, your honor. I would quickly like to address the standard of review issue. I think I can clarify for the court what I think both mine and plaintiff's arguments are. First of all, the McAdams case shows that reviews for scope of employment are de novo, which is one half of the analysis here. The second half, whether or not the motion to granted is generally a motion to dismiss is reviewed de novo, and the district court actually stated that the court finds that an evidentiary hearing is not warranted in this action as there are not any material facts in dispute. The Osborne case cited by the United States says that if there are no material facts in dispute, the standard is de novo. The clearly erroneous standard is only used for facts in dispute. And then to just respond to Mr. Llewellyn quickly, Mr. Harris's admission regarding the backtracking, as I stated earlier, was specifically regarding the delivery of mail. He said that he knew the mail had to be delivered in a specific order, but that it was his understanding, and I can cite to his testimony, it was his understanding that, he said, we all have the same understanding that in our 10-minute break, we can do what we need to or what we want to do in our 10-minute break, and that's on the appendix page 267, and this includes, he said, going tanning, going home to eat lunch, going and running errands, and the issue of shopping at Kmart was irrelevant because the deviation had ended at the point he went to a comfort stop. I see that I am out of time, so I would just briefly like to conclude and request that the court overturn the district court's denial of the petition for certification of employment and the grant of the motion for the motion to dismiss. Thank you, your honors. Thank you, Ms. McLean. Mr. Knierim. Thank you. Very briefly, your honor. Number one, the stringent policies that keep getting described here are specifically allowed to be altered by local rule. Certainly, Mr. Harris and to a great extent, Mr. Finch testified that they had been altered as to what they do and all that's in the briefing, and the last point is about this 25 minutes of personal time. There was not 25 minutes of personal time. There was a brief deviation to Kmart if it was a deviation, and then he went back. Missouri break time is company time, and that's hard Missouri law that cannot be altered. Thank you, your honor. All right. Thank you, Mr. Llewellyn. Thank you also, Ms. McLean, and Mr. Knierim, the court appreciates all counsel's participation in the arguments this morning, and we'll continue to study the briefing and render decision in due course.